IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Crystal C., | ) |
|     *Plaintiff,* | ) ) ) Case No. 17 CV 50260 |
| v. | ) ) Magistrate Judge Iain D. Johnston |
| Nancy A. Berryhill, Acting Commissioner of Social Security, | ) ) ) |
|     *Defendant.* | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Crystal C. brings this action under 42 U.S.C. § 405(g), seeking a remand of the decision denying her social security disability benefits. For the reasons set forth below, the decision is affirmed.

### I. BACKGROUND[1]

On August 26, 2013, Plaintiff filed applications for disability insurance benefits and supplemental security income. R. 107-08. Plaintiff alleged a disability beginning on June 14, 2013, because of systemic lupus erythematosus ("SLE"),[2]

---

[1] The following facts are only an overview of the medical evidence provided in the administrative record and do not include evidence relating to Plaintiff's mental health impairments. Plaintiff has not raised any issues relating to this evidence, so the Court need not address it here. Indeed, Plaintiff does not include her mental health impairments in her arguments that the ALJ failed to incorporate all her impairments into the RFC.
[2] Systemic lupus erythematosus is an inflammatory connective tissue disease with variable features, frequently including weakness, fatigue, joint pains or arthritis resembling rheumatoid arthritis, skin lesions, anemia, and positive LE cell test result. STEDMAN'S MEDICAL DICTIONARY 1124 (28th ed. 2006); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 14.00(D)(1)(a).

depression, high blood pressure, back injury, arthritis, photosensitivity, neck injury, liver damage, kidney damage and stress. R. 271-74, 339.

Plaintiff was diagnosed with SLE when she was 10 years old and had mostly managed symptoms with Prednisone. R. 666. In 2013, Plaintiff injured her shoulder and neck at work by performing repetitive motions. R. 64-65, 335, 605, 629. Plaintiff was unable to return to work due to neck pain that radiated into her arms and back. *Id*.

On April 29, 2016, Plaintiff, represented by an attorney, testified at a hearing before an Administrative Law Judge (ALJ). R. 47-92. The ALJ did not call an impartial medical expert at the hearing.

Plaintiff was then 38 years old. Plaintiff's testimony focused on her neck related impairments, specifically numbness in her left arm and hand, and her back pain. R. 71. Plaintiff testified that approximately once a day, the numbness in her arm caused a temporarily inability to use her hand. R. 71. She testified that she could perform household chores for only 20 minutes at a time before her neck and back pain would require her to sit down. R. 63-64. Plaintiff would have to take pain medication before she could continue. *Id*. Plaintiff performed other daily activities, such as mowing the lawn, by taking medications before the activity to relieve her pain. R. 73. She also received assistance from her two children, ages 13 and 16 at the time of the hearing, and her neighbor. R. 73. Plaintiff was able to walk half a mile before experiencing severe pain. R. 75. Plaintiff testified that she did not have any limitations related to driving long distances. R. 83.

Plaintiff explained that she had good days and bad days and that she experienced four bad days a week. R. 78. Plaintiff estimated her pain level was an eight out of ten on a bad day, even when taking pain medication. R. 80. Plaintiff testified that she did not get any relief for her neck and back pain after receiving steroid injections, despite contrary indications in her medical records. R. 80-81.

The ALJ ultimately denied Plaintiff's request for benefits. R.17-37. The ALJ found that Plaintiff had the following severe impairments: degenerative changes to the spine, hypertension, obesity, a myofascial pain disorder, a headache disorder, and a major depressive disorder. R. 20-23. The ALJ also found that Plaintiff's SLE and associated Raynaud's phenomenon[3] and stage one chronic kidney disease, along with her ulnar nerve neuropathy of the bilateral upper extremities were non-severe impairments. R. 20. The ALJ determined that Plaintiff's impairments did not meet or medically equal a listed impairment. R. 23-26. The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain restrictions. R. 26-34.

## II. STANDARD OF REVIEW

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the

---

[3] Raynaud's phenomenon is a "spasm of the digital arteries, with blanching and numbness or pain of the fingers, often precipitated by cold. Fingers become variably red, white, and blue." STEDMAN'S MEDICAL DICTIONARY 1478 (28th ed. 2006).

decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence). A reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Moreover, federal courts cannot build a logical bridge on behalf of the ALJ. *See Mason v. Colvin*, No. 13 C 2993, 2014 U.S. Dist. LEXIS 152938, at *19-20 (N.D. Ill. Oct. 29, 2014).

### III. DISCUSSION

On appeal, Plaintiff argues that remand is appropriate because the ALJ failed to consider the combination of her symptoms when making his decision. Plaintiff argues that the ALJ failed to (1) include restrictions in the RFC relating to her SLE, (2) conduct a thorough analysis of Listing 1.04(A), and (3) properly evaluate the medical opinions.

The Commissioner responds to Plaintiff's arguments with supporting evidence from the record. Plaintiff, in a two-page reply, ignores most of these counter points and reiterates that the ALJ failed to "account for the combination of plaintiff's conditions." Plaintiff's Reply at 1, Dkt. 17. Plaintiff then devotes only two paragraphs to assert that the ALJ improperly dismissed her limitations relating to her SLE and neck impairment. Plaintiff has failed to respond or fully develop many of her arguments, which results in a forfeiture of these issues on appeal. *See Baker v. Colvin*, 2015 U.S. Dist. LEXIS 19386, *11 (N.D. Ill. Feb. 18, 2015) (finding that "undeveloped" arguments, which rely on "passing references to Listing 11.03 and the ALJ's step-two and credibility analyses without providing any substantive support for his assertions" are deemed waived); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (failing to respond to an argument results in waiver). For this reason and the reasons discussed below, the Court believes that a remand is not warranted.

## A. RFC

The ALJ found that Plaintiff had the ability to perform light work with additional restrictions for reaching, handling, fingering and use of hand controls with the left upper extremity. R. 26. The ALJ also limited Plaintiff to understanding, carrying out, remembering and performing simple, routine and repetitive tasks involving only simple, work-related decisions with the ability to adapt only to routine workplace changes. R. 26. The ALJ determined this RFC by giving great weight to the results of Plaintiff's functional capacity evaluation and a

medical source statement from Plaintiff's treating rheumatologist. R. 30-31, 33. The ALJ also determined that Plaintiff was not as limited as she alleged because she responded well to treatment for her SLE, had the ability to sustain activity and lacked consistent evidence of functional limitations relating to ambulation, strength and range of motion. R. 29-31.

Plaintiff argues that the ALJ's RFC determination is flawed because it did not include SLE-related restrictions. Plaintiff does not challenge the ALJ's determination that Plaintiff's SLE was a non-severe impairment. Plaintiff also does not offer specific restrictions that the ALJ should have included in her RFC. Instead, Plaintiff generally alleges "there are limitations from the SLE that could, in combination with other impairments, render plaintiff incapable of working." Plaintiff's Reply at 2, Dkt. 17.

Plaintiff relies in part on *Golembiewski v. Barnhart*, 322 F.3d 912 (7th Cir. 2003) and *Clifford v. Apfel*, 227 F.3d 863 (7th Cir. 2000), to argue that failing to consider the combined effects of Plaintiff's medical conditions supports a remand. However, in those cases, the ALJ ignored significant medical evidence supporting the plaintiffs' claims. *See Golembiewski*, 322 F.3d at 917; *Clifford*, 227 F.3d at 873-74.

Here, Plaintiff does not identify any specific evidence in the record that the ALJ failed to consider or restrictions the ALJ failed to include in her RFC. Plaintiff's main argument hinges on the interpretation of the medical source statement from her treating rheumatologist, Dr. Robin Hovis. Plaintiff argues that

the ALJ "minimized the SLE on the basis of plaintiff's physical examinations and minimal disease activity (TR. 20-21) but failed to account for Dr. Hovis' findings that plaintiff would be off task 10% of the work day, presumably for the SLE." Plaintiff's Reply at 2, Dkt. 17.[4]

However, Plaintiff misreads Dr. Hovis' medical source statement. In March 2016, Dr. Hovis submitted a medical source statement opining that Plaintiff had no physical restrictions from her SLE, noting that she had minimal SLE disease activity since 2013 and had "[n]o active lupus" in the last year. R. 2076-81. Dr. Hovis specifically found that Plaintiff would be off task 0% of the workday. R. 2080. That is zero percent, not ten percent, which is a fairly important difference.

In her reply, Plaintiff admits that she misread the medical source statement by Dr. Hovis, but still makes the argument that the ALJ failed to consider that she would be off task "10% of the work day, presumably for the SLE." Plaintiff's Reply at 2, Dkt. 17. No evidence exists that Plaintiff will be off task 10% of the day. Obviously, the Court will not find error where the ALJ failed to consider a piece of evidence that was not in the record, and when Plaintiff's entire argument is based on counsel's erroneous reading of the record.

Plaintiff also notes that Dr. Hovis found that Plaintiff had slight restrictions in activities of daily living and in maintaining social function. R. 2078. Dr. Hovis

---

[4] Note the use of the word "presumably." Set aside the fact that this whole argument is erroneous because there is no finding, the use of the word "presumably" shows that counsel is playing doctor. It is counsel who presumes the time off task would relate to the SLE. Just as the ALJ and this Court cannot play doctor, claimant's counsel cannot play doctor by making medical assumptions. *Lopez v. Astrue*, 807 F. Supp. 2d 750, 763 (N.D. Ill. 2011); *see Lewis v. Colvin*, No. 14 CV 50195, 2016 U.S. Dist. LEXIS 115969, *11 n.3 (N.D. Ill. Aug. 30, 2016) (ALJs, courts and counsel cannot play doctor).

also found that Plaintiff had moderate limitations in concentration, persistence or pace.  R. 2078.  But the ALJ adopted this assessment and determined that Plaintiff could understand, carry out, remember and perform simple, routine and repetitive tasks involving only simple, work-related decisions with the ability to adapt only to routine workplace changes.  R. 26.  Plaintiff does not challenge the ALJ's determination or the weight he afforded Dr. Hovis' opinion.  Plaintiff appears to be challenging only the ultimate determination about her RFC, with little guidance for the Court to determine what was left out or was not reviewed.

If Plaintiff is arguing that her functional limitations required additional restrictions in her RFC, she fails to consider that despite Dr. Hovis' determination, she explicitly found that Plaintiff would be off task 0% of the workday, would be able to tolerate moderate stress associated with "normal work," and had no lupus impairment.  R. 2080-81.  Accordingly, the ALJ's RFC determination accurately reflected this opinion.

Plaintiff also argues that Dr. Hovis limited Plaintiff to sedentary work because she indicated Plaintiff could sit for more than 2 hours at a time but failed to indicate how many hours Plaintiff could stand or walk.  *See* R. 2078.  The Court is not willing to speculate that the absence of a restriction for standing and walking meant Plaintiff was limited to sedentary work, especially where Dr. Hovis made it clear that Plaintiff had no SLE-related restrictions – a decision supported by the record.  Furthermore, Plaintiff points to no other medical opinion that she was limited to sedentary work.

Even Dr. Hovis' statement that most of Plaintiff's impairments related to her neck issues does not open the door for fashioning additional restrictions that were not specifically included. R. 2078-81. Dr. Hovis was Plaintiff's treating rheumatologist, who filled out a "Lupus (SLE) Medial Source Statement" and found minimal restrictions. R. 2076. Restrictions relating to Plaintiff's neck issues would more appropriately be evaluated by Dr. Matthew Davidson, a physical therapist who performed a functional capacity evaluation of Plaintiff in November 2013. R. 642. Just as he did for Dr. Hovis' opinion, the ALJ afforded Dr. Davidson's opinion great weight. R. 30-31, 33. Dr. Davidson opined that despite Plaintiff's reported neck pain with activity and decreased range of motion in her neck and strength in her upper extremities, she had no restrictions for sitting, standing or walking. R. 642-43. Plaintiff does not challenge the ALJ's reliance on the functional capacity evaluation. Plaintiff makes a general statement that the ALJ minimized her nerve impingement in her neck because she retained muscle strength and sensory function. Plaintiff's Reply at 2, Dkt. 17. Again, Plaintiff does not point to any contrary evidence in the record that the ALJ should have considered when evaluating restrictions relating to her neck impairment. Accordingly, Plaintiff does not raise a basis for remand.

### B. Listing 1.04(A)

Plaintiff accuses the ALJ of conducting a perfunctory analysis of Listing 1.04(A) for her neck impairment and related symptoms.

Listing 1.04 describes spinal disorders that result in compromise of a nerve root or the spinal cord. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04. Subsection A of Listing 1.04 further requires "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04(A).

The ALJ found that Plaintiff did not meet this listing because her global muscle strength remained intact in all extremities throughout 2014 and 2015 as did coordination and sensory function. R. 23 (citing to Exhibits 8F and 15F).

Plaintiff's only argument that she met the criteria for Listing 1.04(A) appears to be that she complained of numbness and tingling in her hands, citing to records from August and October 2013. *See* R. 608, 632. Plaintiff also complains that the ALJ failed to cite to a specific medical record to support his determination that Plaintiff's sensory examination was normal.

The Court disagrees. Although a more precise citation to the record would have been helpful, this case is unlike the perfunctory analysis the Seventh Circuit repeatedly finds insufficient. *See Minnick v. Colvin*, 775 F.3d 929, 935-36 (7th Cir. 2015); *Kastner v. Astrue*, 697 F.3d 642, 647 (7th Cir. 2012). For example, among other things, the ALJ cited to Exhibits 8F and 15F, which show that Plaintiff retained muscle strength and sensory function from 2014 through 2015. *See, e.g.*, R. 676 (March 2014 notes reporting normal strength and tone and normal symmetric reflexes), R. 681 (April 2014 notes reporting normal muscle power and no sensory

deficits), R. 1923 (May 2015 note reporting normal strength and no sensory deficit).[5] The ALJ elaborated on these medical records in his RFC analysis and determined that despite Plaintiff's subjective complaints, her examinations revealed normal sensation and muscle strength. R. 31.[6] Plaintiff has not cited to any contrary medical records, other than her subjective complaints, to contradict this finding.

Plaintiff also does not challenge the ALJ's determination that her ability to perform activities of daily living and drive for extended periods contradicted her alleged inability to use her arms and hands. *See* R. 21-22. The ALJ considered Plaintiff's subjective complaints and rejected them. Plaintiff's general argument that a "remand is required for the ALJ to take another look at the evidence when the court cannot be sure that the ALJ considered important evidence" does not justify a remand where Plaintiff does not argue that the ALJ overlooked any "important evidence." Plaintiff's Brief at 10, Dkt. 11.

Plaintiff also argues that the ALJ should have called an impartial medical expert at the hearing to determine whether her neck and myofascial pain and dysfunction in her upper extremities could support a finding of equivalency for Listing 1.04(A). This Court often questions ALJs that neglect to call a medical

---

[5] The Commissioner points to several other records in her response to support the ALJ's conclusion. Commissioner's Response at 2, Dkt. 16. Plaintiff does not address any of these records in her reply.

[6] While the Court is concerned with the ALJ's discussion of Plaintiff's two recent MRIs without the benefit of a medical expert, *see McHenry v. Berryhill*, No. 18-1691, 2018 U.S. App. LEXIS 36511, at *9-12 (7th Cir. Dec. 26, 2018), Plaintiff does not argue, and the Court does not find, that these results support the criteria for Listing 1.04(A) or were otherwise decisive in the ALJ's decision. In her pre-hearing brief, Plaintiff relied solely on an August 2013 MRI to assert that she met Listing 1.04(A). R. 475-76. This MRI was reviewed by the state-agency physicians, who determined Plaintiff's impairment was non-severe. R. 115.

expert at the hearing. *See, e.g., Potega v. Berryhill*, No. 16 CV 50110, 2017 U.S. Dist. LEXIS 87200, at *19 (N.D. Ill. June 7, 2017) (remanding where ALJ interpreted the medical evidence without the benefit of a medical expert); *Guetschow v. Colvin*, No. 15 CV 50260, 2017 U.S. Dist. LEXIS 8713, at *14 (N.D. Ill. Jan. 23, 2017) (same); *Hurlbut v. Colvin*, No. 15 CV 50270, 2017 U.S. Dist. LEXIS 16822, at *10 (N.D. Ill. Feb. 7, 2017) (remanding to have a medical expert answer several questions about the medical treatment at issue).

Nevertheless, Plaintiff makes no specific argument to support why an expert was necessary in this case. Plaintiff never presented any evidence suggesting medical equivalence to the ALJ at the hearing. On appeal, Plaintiff provides no analysis of the criteria required of Listing 1.04(A) or point to correlating medical evidence or a medical opinion in the record that would support a finding that she meet or equaled these requirements. *See Eskew v. Astrue*, 462 Fed.Appx. 613, 616 (7th Cir. 2011) ("[T]he burden of proof at step 3 rests with the claimant, and the ALJ has no duty to analyze equivalence when the claimant…presents no substantial evidence of it."). Without any further support, this argument is deemed forfeited. *See Baker*, 2015 U.S. Dist. LEXIS 19386, *11.

### C. Opinion Evidence

Plaintiff argues that the ALJ failed to reconcile the seemingly conflicting medical opinions in the record from Dr. Hovis, who provided very few restrictions, and Dr. Ishmeet Singh, her treating pain specialist who provided more severe restrictions. Plaintiff argues that based on her numerous impairments, the ALJ

should have sought clarification to determine: (1) whether Dr. Hovis' opinion related solely to SLE; and (2) what extent Dr. Singh relied on the functional capacity evaluation when formulating Plaintiff's restrictions.

Plaintiff does not otherwise elaborate or provide support for this argument. Plaintiff does not argue that the ALJ should have given Dr. Singh's opinion controlling weight, other than providing a parenthetical case citation without further argument or support. *See* Plaintiff's Brief at 12, Dkt. 11. Instead, she makes a general argument that the ALJ was required to seek clarification without indicating how it would have affected the ALJ's ultimate determination. Putting aside forfeiture of an undeveloped argument, Plaintiff's argument is also without merit because no clarification was required.

For the reasons already addressed, the ALJ afforded great weight to Dr. Hovis' opinion and accounted for those limitations in Plaintiff's RFC. The ALJ discounted Dr. Singh's opinion for reasons related to the functional capacity evaluation, not Dr. Hovis' opinions. Therefore, requiring clarification of Dr. Hovis' opinion is unnecessary.

It is similarly unnecessary to seek clarification from Dr. Singh about his reliance on the functional capacity evaluation. The ALJ afforded his opinion "little weight" because his restrictions did not accurately reflect those outlined in Plaintiff's functional capacity evaluation. R. 33; *compare* R. 643 (Dr. Davidson's functional capacity evaluation) *with* R. 783, 787 (Dr. Singh's restrictions). It

appears clear from Dr. Singh's notes that he explicitly relied on the functional capacity evaluation when determining Plaintiff's work restrictions.

Dr. Singh informed Plaintiff that he was reluctant to provide any restrictions for her without first receiving a functional capacity evaluation. *See* R. 773 (10/2013: Dr. Singh advised Plaintiff that "in order to assess her work limitations she needs to have that addressed with an FCE. I would not be able to make a judgment strictly based upon an initial evaluation."). Plaintiff received a functional capacity evaluation in November 2013. Dr. Davidson found Plaintiff capable of carrying 40 pounds occasionally and 10 pounds constantly, lifting from the floor 30 pounds frequently and 10 pounds constantly, lifting to her shoulder 20 pounds frequently and 10 pounds constantly, pushing and pulling 56 pounds occasionally and 14 pounds constantly, bending constantly, maintaining low level activity constantly and climbing stairs constantly. R. 643.

Thereafter in June 2014,[7] Dr. Singh stated "FCE reviewed and recommendations for work restrictions are based on FCE evaluation. Please review." R. 783. Dr. Singh then restricted Plaintiff to carrying and lifting less than 10 pounds, pushing and pulling less than 14 pounds, noting that she could bend, maintain low level activity and climb stairs. R. 783. Dr. Singh qualified his restrictions as "general guidelines per her FCE for an estimated 8 hr work [ ] shift." R. 783.

---

[7] The ALJ cites to Dr. Singh's September 2014 assessment when evaluating his opinion. R. 33. Dr. Singh's restrictions from June and September 2014 are nearly identical. *Compare* R. 783 *with* R. 787 (adding to the restrictions that Plaintiff is also limited to flexion/extension and neck rotation less than 33% of an eight-hour work shift).

Dr. Singh stated that he based his opinion on the function capacity evaluation. The ALJ reviewed the functional capacity evaluation and afforded it great weight. Not surprisingly, the ALJ then determined that Dr. Singh's restrictions were inconsistent with this evaluation because they are. Instead of adopting the functional capacity evaluation outright, Dr. Singh appears to have fashioned his restrictions from the most restrictive components of the functional capacity evaluation without any explanation as to the reason. It was reasonable for the ALJ to question such a discrepancy. However, finding Dr. Singh's opinion unsupported by the record did not require the ALJ to seek clarification from Dr. Singh. *See McFadden v. Berryhill*, 721 F. App'x 501, 506 (7th Cir. 2018) ("[A]n ALJ may evaluate the explanations provided to support an opinion and need not recontact the source every time she undertakes such an evaluation.") (quoting *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009)) (internal quotation marks omitted).

Nevertheless, even if Dr. Singh clarified his opinion and explained that Plaintiff required more restrictive limitations, Plaintiff does not challenge the functional capacity evaluation, the ALJ's decision to afford it great weight or the other medical evidence in the record that the ALJ relied on to determine Plaintiff's RFC. Therefore, it is unclear how clarifying Dr. Singh's opinion would affect the ALJ's RFC determination.

## IV. CONCLUSION

For the reasons stated in this opinion, Plaintiff's motion for summary judgment [11] is denied, and the Commissioner's motion [16] is granted. The decision of the ALJ is affirmed.

Date: January 29, 2019          By: _____
                                Iain D. Johnston
                                United States Magistrate Judge